PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT WILLIAMS, | ) | |
| | ) | CASE NO. 4:23-CV-01950 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| JARED MCGILTON, et al., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*Pro se* Plaintiff Robert Williams, a prisoner currently incarcerated in the Southern Ohio

Correctional Facility ("SOFC"), filed this action under 42 U.S.C. § 1983 on January 3, 2023 in

the United States District Court for the Southern District of Ohio.  The Complaint initially

named as Defendants five officials from the Noble Correctional Institution ("NCI"), seven

officials from the Trumbull Correctional Institution ("TCI") and two officials from the Ohio

Department of Rehabilitation and Correction ("ODRC").  That Complaint focused largely on an

incident that took place at NCI in 2021, which Plaintiff characterized as a sexual assault by one

of the officers.

Plaintiff submitted another Complaint on March 31, 2023 and then followed that on May

18, 2023 and June 2, 2023 with Exhibits and Declarations to be added to his second Complaint.

On July 31, 2023, Plaintiff filed a Motion to Amend his Complaint once again.  The Southern

District of Ohio granted his Motion on August 17, 2023 and gave him thirty days to submit an

amended pleading.  The Court ordered him to file it as a single document that would take the place of all other Complaints submitted previously.  The Amended Complaint could not incorporate by reference any prior Complaint or other documents and must contain all claims against all Defendants.

Plaintiff filed an Amended Complaint on September 14, 2023.  This pleading names only ODRC Chief Inspector Chris Lambert,[1] ODRC Assistant Chief Inspector Kelly Richly,[2] TCI Warden Anthony Davis, TCI Captain Theresa Carter, TCI Corrections Officer Malvasa, TCI Corrections Officer E. Richardson, TCI Lieutenant Davis, TCI Corrections Officer G. Meade, TCI PREA Coordinator Mrs. Hurst and Southern Ohio Correctional Facility ("SOCF") Inspector K. Parker as Defendants.  The NCI Defendants (Jared McGilton, Jodi Starr, James Craig, Officer Cobb, and Officer White) were not included in the Amended Complaint.  Plaintiff also excluded TCI Inspector Donna Crawford and TCI Chief Medical Officer M. Hinkle from the Amended Complaint.  These Defendants are dismissed from this action.

Seven of the remaining Defendants are from TCI, which is in the geographic territory of the Northern District of Ohio while three of the remaining Defendants are from the ODRC and SOCF, which are in the geographic territory of the Southern District of Ohio.  Venue is proper in either judicial district.  The United States District Court for the Southern District of Ohio determined that it would be more convenient for the parties to litigate in the Northern District of Ohio and transferred the case to this Court on October 4, 2023.

---

[1]      Plaintiff identified this Defendant in his original Complaint as Christ Lambambert.

[2]      Plaintiff identified this Defendant in his original Complaint as Kelly Richle.

2

One month after the transfer, on November 2, 2023, Plaintiff submitted a 105 page supplement to his Amended Complaint.  ECF No. 23.  This supplement is in contradiction to the Order of the Southern District Court to file his Amended Complaint as a single document.  The purpose of doing that was to avoid voluminous piecemeal pleadings.  Because the supplement does not comply with the Order of the Southern District, the Court will not consider it.  It is stricken from the record.  The Court reminds Plaintiff that no additional amendments or supplements will be permitted without prior leave of Court.  Plaintiff is further cautioned that if the Court grants permission to supplement the Complaint, he will be required to provide a complete copy of the supplement for each Defendant, at his expense.

## I.  Background

Plaintiff alleges that on July 7, 2022, Lieutenant Davis and other staff at the Ohio State Penitentiary ("OSP") conducted a mass strip search of the inmates at the prison.  It is not clear from the pleading whether this search took place at OSP or at TCI.  He indicates that over 200 inmates were forced to submit to this search in front of their cellmates, other inmates and security cameras throughout the prison.  Plaintiff claims his cell was directly across from a security camera and very close to the corrections officers' desk.  He alleges two female officers were on duty that day but Plaintiff does not indicate if they were sitting at the desk while the search was taking place.  Plaintiff states that Lieutenant Davis noticed he was uncomfortable and commented that nobody was going to rape him, and added "this isn't NCI."  ECF No. 18 at PageID #: 165.

Plaintiff alleges that on September 26, 2022, Captain Carter authorized Officer Richardson to put him in the recreation cell.  Plaintiff claims that someone else's bowel movement and urine was on the floor.  He claims he had to sleep there overnight after several inmates refused to have him as a cellmate.  He states that he was released from the recreation cell the following morning.  He contends he got sick due to Carter's "neglect."  ECF No. 18 at PageID #: 163.  He alleges that the biohazard team came in after he left and cleaned the cell.

Plaintiff indicates he was supposed to room with inmate J. Harris upon his release from the recreation cell.  When Harris learned that officers were planning to move Plaintiff into his cell, he informed the officers that he would assault anyone who came into his cell.  Plaintiff alleges the officers called Carter to explain the situation to her.  He states that she authorized him to be placed in the cell with Harris.  Several days later, Plaintiff and Harris were taken to the recreation cell.  Plaintiff claims he was still handcuffed but Harris had been released into the cell.  Plaintiff alleges Harris attacked him while he was still handcuffed, punching and kicking him until he was unconscious.  He states he was treated for a cut above his eye and an injured knee.  He claims Harris had a higher security classification than he did and should not have been placed in a recreation cell with him.

Plaintiff alleges that on October 8, 2022, Officer Malvasa dropped his food tray through the slot allowing it to fall on the floor.  Plaintiff contends he asked Malvasa if he was going to be fed and reports that Malvasa told him to kill himself.  Plaintiff indicates that in response to this statement, he cut both of his wrists.  He states that Malvasa watched him for over an hour before alerting medical staff.  Plaintiff was escorted to suicide watch.  He claims that he filed a

4

grievance about the incident.  He states that Malvasa admitted to telling Plaintiff to kill himself and Carter told him to remain professional.

Plaintiff contends that on November 11, 2022, Malvasa came to his cell and told him to give up his lawsuit.  Plaintiff claims Malvasa then began to harass him about his allegations of sexual assault against Cobb at NCI.  Plaintiff indicates that Malvasa pulled him out of his cell to conduct a pat down search.  He contends Malvasa commented that Plaintiff was afraid of pat down searches because he did not want anyone to know he had female genitalia.  He then pulled Plaintiff's pants down while Plaintiff was in handcuffs and walked him to recreation.  He states inmates and officers laughed at him.  Malvasa claimed it was an accident.

Plaintiff alleges that on November 27, 2022, Malvasa and Meade were returning him to his cell.  While they were taking the handcuffs off of him, Meade began to pull on the handcuffs like he was playing tug-of-war.  Plaintiff claims this injured his wrist.

Plaintiff alleges that on January 10, 2023, Malvasa denied him food.  He states that he tried to inform Lieutenant Davis but before he could do so, Malvasa came into his cell and sprayed him with pepper spray.  He states Malvasa handcuffed him and led him out of the cell.  Plaintiff alleges Malvasa bent his fingers and pulled his hair.  He alleges that when they were in a blind spot to the cameras, Malvasa punched him in the face, head, and kidneys, and kneed him in the groin area.  He claims Officer Richardson also participated in this assault, punching and kicking him.  Plaintiff alleges Lieutenant Davis broke up the assault, saying, "that's it for playtime" and "I'm turning my camera on now."  ECF No. 18 at PageID #: 165.  He contends

Malvasa was suspended for two weeks after the assault.  He further alleges that Malvasa wrote a false conduct report claiming Plaintiff threw liquid on him.

Plaintiff contends Captain Carter was called by an unidentified officer after the incident. Carter ordered the officers to conduct a body cavity search on Plaintiff and place him in a cell by himself.  Plaintiff claims he was stripped and left naked in this cell for three days without a bed or bedding, hygiene products, a toilet, or running water.  He claims he awoke a few times choking on the pepper spray that had been used on him.  He states here that Malvasa sprayed it through the food slot prior to entering the cell.

Plaintiff's claims against Lambert, Richly and Parker are based on their responses to his many grievances.  He states that Parker "has succeeded in not giving me printouts of the complaints that some Defendants have admitted guilt on."  ECF No. 18 at PageID #: 167.  He has not made other allegations against Parker.  He alleges that Lambert and Richly, the ODRC Chief Inspector and Assistant Chief Inspector, upheld decisions of the Institutional Inspector stating that the officer did everything according to policy.  Plaintiff does not indicate on which dates grievances these occurred, or what incidents were the basis for the grievances.  There are no other allegations against these Defendants.

Plaintiff alleges that Anthony Davis as the warden is in charge of daily operations at the prison.  He contends that Davis was "informed of the prohibited behavior from staff . . . [and] did nothing to fix it."  ECF No. 18 at PageID #: 166.  He states that Warden Davis put his nephew Lieutenant Davis in charge of his housing unit just to intercept his mail before he

received it.  ECF No. 18 at PageID #: 166.  He, however, does not allege that Lieutenant Davis interfered with his mail.  There are no other allegations against Warden Davis.

Finally, Plaintiff alleges that the TCI PREA Coordinator Mrs. Hurst was instructed to limit his ability to file sexual misconduct allegations and informed correction officers to prevent him from filing any PREA reports.  He states he was placed in a cell with a sexual predator and "had to fight him off" before the inmate told Plaintiff that the TCI administration did not like him.  ECF No. 18 at PageID #: 166.  Plaintiff does not provide any additional information about this incident.  He does not allege that any sexual assault occurred at TCI or that he was actually prevented from filing a report.  He also does not elaborate on who instructed Mrs. Hurst to limit his ability to file these type of complaints.

Plaintiff does not identify a legal cause of action in his Complaint.  It appears from the allegations that he may be attempting to assert causes of action under the Eighth Amendment.  He also appears to assert a claim of retaliation against Malvasa and Richardson.  ECF No. 18 at PageID #: 168.  He indicates he is suing Malvasa, Meade, Richardson, Lieutenant Davis, Captain Carter and Warden Davis in their official and individual capacities.  He does not indicate the capacity in which he sues the other Defendants.  He seeks monetary damages.

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*,

7

490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true.  *Bell Atl. Corp.*, 550 U.S. at 555.  The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id.*  In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### III.  Law and Analysis

Although Plaintiff does not specify a cause of action he intends to assert against the Defendants, the majority of his claims appear to fall under the Eighth Amendment.  He also states that he is seeking monetary relief from Malvasa and Richardson "not only for physical injuries but also for the psychological effects this whole retaliatory experience has had on

8

[him]." ECF No. 18 at PageID #: 168.  The Court liberally construes this as a claim for retaliation against Malvasa and Richardson.  Plaintiff's Eighth Amendment claims can be divided into claims relating to harassing or offensive comments, physical assaults and humiliation, failure to protect Plaintiff from assaults by another inmate or corrections officers, conditions of confinement, and responses to grievances on the other claims.  In addition to these claims, Plaintiff names Warden Davis as a Defendant stating that he is in charge of the daily operations at the prison and did nothing to fix the behavior from his staff.  He claims Parker found ways to avoid giving him copies of grievances he filed.  He asserts that Hurst was told not to process additional PREA claims.

### A.    Official Capacity and Individual Capacity Claims

Plaintiff brings this action against Defendants in their official and individual capacities.  Individual capacity claims seek to hold a defendant personally liable for damages.  These claims must be based on the defendant's own actions.  A defendant cannot be held liable simply because he or she was in charge of the operation of the facility or was charged with overseeing a subordinate who may have violated Plaintiff's constitutional rights.  *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)).  Instead, individual liability requires some active unconstitutional behavior on the part of the Defendant.  *Peatross*, 818 F.3d at 241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Consequently, unless a plaintiff affirmatively pleads the direct involvement of a defendant in unconstitutional action, the complaint fails to state a claim against

that defendant in his or her individual capacity and dismissal is warranted. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Conversely, claims asserted against defendants in their official capacities are claims directed at the political entity they serve, not the individual defendant. In this case, the claims asserted against Defendants in their official capacity are claims directed against the State of Ohio. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

### 1. Official Capacity Claims

Plaintiff's claims cannot be asserted against the Defendants in their official capacities. He seeks only monetary damages. The Eleventh Amendment is an absolute bar to the imposition of damages upon the State of Ohio. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

### 2. Individual Capacity Claims

Claims against a defendant in his or her individual capacity must be based on allegations indicating the individual actively participated in unconstitutional conduct. They cannot be based on the defendant's role as a supervisor or on their ability to review the actions of others.

Plaintiff's only allegation against Warden Davis is that he is in charge of the day to day operations of the prison and did not fix the behavior of his staff. That claim is based on a *respondeat superior* theory of liability, and not on any actions that the Warden himself performed. The claims against him are dismissed. *Peatross*, 818 F.3d at 241.

Plaintiff's claims against Lambert and Richly are based generally on their decisions on certain grievances. These Defendants are the ODRC Chief Inspector and Assistant Chief

Inspector.  Plaintiff alleges that they responded to appeals of his grievances in favor of the officer in question.  Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983.  *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999).  The claims against Lambert and Richly are dismissed.

Parker appears to be the Institutional Inspector at SOCF.  None of incidents described in the Complaint occurred at SOCF.  Plaintiff's only allegation against Parker is that he or she finds ways to avoid giving him copies of grievances already filed.  This is a very general allegation. Plaintiff does not indicate which constitutional right he believes Parker violated and none is apparent on the face of the Complaint.  The claims against Parker are also dismissed.

Plaintiff has a similar claim against Hurst.  He alleges that an unnamed person told Hurst to limit his ability to file PREA reports.  Plaintiff does not allege that a PREA incident occurred at TCI or that Hurst prevented him from pursuing it.  He does not indicate which constitutional right he believes that she violated and none is apparent from the limited allegation against this Defendant.  The claims against Hurst are dismissed.

**B.    Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment protects inmates by requiring that "prison officials [] ensure that inmates receive adequate food, clothing, shelter, and medical care, and [] 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting

11

*Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration.  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  Prisoners are not entitled to unfettered access to the medical treatment of their choice, s*ee Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel."  *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *see Thaddeus-X v. Blatter,* 175 F.3d 378, 405 (6th Cir. 1999).  In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance.  *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  *Id.*  Seriousness is measured in response to "contemporary standards of decency."  *Hudson*, 503 U.S. at 8.  Routine discomforts of prison life do not suffice.  *Id.*  Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment.  *Id.* at 9.  A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind.  *Id.* at 8.  Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good

faith error.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Liability cannot be predicated solely on negligence.  *Id.*  A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### 1.  Harassing Comments

Plaintiff claims that Defendants made harassing comments toward him.  Specifically, he contends Lieutenant Davis told him during the mass strip search that he was not going to be raped and this was not NCI and generally made distasteful comments about the incident that Plaintiff reported at NCI.  ECF No. 18 at PageID #: 165.  He claims Malvasa also made offensive comments about that incident and told him on one occasion to kill himself.  ECF No. 18 at PageID #: 159.  While that behavior, if true, would not reflect exemplary professional standards, verbal harassment and offensive comments do not meet the objective criteria to state an Eighth Amendment claim.  *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987).

### 2.  Physical Assaults and Humiliation

Plaintiff alleges several incidents in which he claims he was physically assaulted by corrections officers.  He claims that on November 27, 2022, Meade pulled on his handcuffs as if he was playing tug-of-war, causing injury to his wrists.  ECF No. 18 at PageID #: 160.  He claims that on January 10, 2023, Malvasa sprayed him with pepper spray and bent his fingers back while placing him in handcuffs.  Plaintiff claims that Malvasa then pulled his hair, punched him in the face, head and kidneys and kneed him in the groin.  ECF No. 18 at PageID #: 160-161.  He claims Richardson also participated in this assault by punching and kicking him.  ECF

13

No. 18 at Page ID #: 161. These allegations, if true, state a plausible Eighth Amendment claim that survives initial screening under 28 U.S.C. § 1915(e).

Plaintiff also alleges that Malvasa humiliated him on November 11, 2022. He claims Malvasa removed him from his cell, conducted a pat-down search and then pulled Plaintiff's pants down while he was in handcuffs and made Plaintiff walk to recreation in the condition so that everyone who witnessed it could laugh at him. ECF No. 18 at PageID #: 160. The Eighth Amendment prohibits prison officials from engaging in conduct that involves the unnecessary and wanton infliction of pain. *Rhodes*, 452 U.S. at 345. It ensures that prison officials provide inmates with adequate food, clothing, shelter, and medical care, and take reasonable steps to ensure their safety. *Farmer*, 511 U.S. at 833. It does not govern behavior that merely makes a prisoner uncomfortable for a brief period of time. This incident, while causing Plaintiff to feel embarrassed, did not endanger his safety or cause him unnecessary pain. It did not violate Plaintiff's Eighth Amendment rights. *See Tupper v. Wexstaff*, No. 1:23-CV-336, 2023 WL 3316870, at *4 (W.D. Mich. May 9, 2023) (ordering Plaintiff "to pull down his pants in front of other prisoners," as part of a search, did not violate Plaintiff's Eighth Amendment rights even if it caused Plaintiff to endure humiliation and mental stress); *George v. City of New York*, No. 12 CIV. 6365 PKC JLC, 2013 WL 5943206, at *8 (S.D.N.Y. Nov. 6, 2013) (strip search conducted in front of other inmates for the purpose of humiliating the inmates did not violate the Eighth Amendment); *Thomas v. Caruso*, No. 1:08CV497, 2008 WL 4738439, at *4 (W.D. Mich. Oct. 24, 2008) (pulling Plaintiff's pants down in the chow line did not violate the Eighth Amendment).

14

### 3. Failure to Protect

Plaintiff has two failure to protect claims.  His first claim is asserted against Captain Carter.  Plaintiff alleges that on September 26, 2022, he spent the night in the recreation cell because several other inmates refused to have him as a cellmate.  On the morning of September 27, 2022, Plaintiff was supposed to move in with inmate Harris.  Prior to the move Harris told corrections officers that he would assault any inmate they moved into his cell.  The officers called Carter and asked what should be done.  Plaintiff claims she ordered him to be placed in the cell with Harris.  Plaintiff alleges he was physically assaulted by Harris two weeks later.  The failure to segregate violent inmates from non-violent inmates may constitute "deliberate indifference" where there is a pervasive risk of harm or where the victim belonged to an identifiable group of prisoners for whom risk of assault is a serious problem.  *Street v. Corrections Corporation of America*, 102 F.3d 810, 814 (6th Cir. 1996).  Plaintiff states a plausible claim against Carter for failure to protect that survives summary review under 28 U.S.C. § 1915(e).

Plaintiff's second claim is asserted against Lieutenant Davis.  Plaintiff states only that on January 10, 2023, Davis "allowed him to be assaulted."  ECF No. 18 at PageID #: 165.  He does not explain this statement and includes no allegations pertaining to Davis before or during much of the assault.  Plaintiff states only that Davis intervened to break up the assault stating, "chill, that's it for playtime" and "that's enough."  ECF No. 18 at PageID #: 165.  Plaintiff claims Malvasa was suspended for two weeks as a result of the assault.  Plaintiff does not allege facts to suggest Lieutenant Davis failed to protect him from the assault by Malvasa and Richardson.

15

### 4.  Conditions of Confinement

Plaintiff asserts two claims pertaining to conditions of confinement to which he was subjected.  The first incident occurred on September 26, 2022.  He claims that Carter authorized Richardson to put him in the recreation cell for the evening because several inmates had refused to accept him as a cellmate.  He claims that the cell had a bowel movement and urine on the floor.  He was moved the next morning.  While this may state a plausible claim against Richardson, there are no allegations suggesting Carter was aware of the condition of the cell when she authorized Plaintiff to be moved there.

The second incident occurred on January 10, 2023 after the assault by Richardson and Malvasa.  Plaintiff claims Lieutenant Davis called Carter and informed her of the assault.  Plaintiff alleges that Carter ordered him to be strip searched and placed naked in a cell with no bed, no bedding, no hygiene products , no toilet and no running water.  Plaintiff claims he was kept in this cell for three days.  Plaintiff states an arguable claim against Carter that survives summary review under 28 U.S.C. § 1915(e).

## C.  Retaliation

Finally, Plaintiff alleges that Malvasa and Richardson retaliated against him.  ECF No. 18 at PageID #: 168.  He further states, "If I hadn't previously filed a lawsuit (in which my mail was held until it was dismissed) and complained about the NCI incident, none of this would've happened because I don't go looking for trouble."  ECF No. 18 at PageID #: 162.   To state a *prima facie* case for retaliation prohibited by the First Amendment, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a

16

person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  While not a well-developed claim, Plaintiff alleges enough facts to state a plausible claim for retaliation that survives summary review under 28 U.S.C. § 1915(e).

### IV.  Conclusion

Plaintiff's Supplement to the Amended Complaint (ECF No. 23) is stricken from the record.

Defendants Jared McGilton, Jodi Starr, James Craig, Officer Cobb, Officer White, Donna Crawford, and Officer M. Hinkle are dismissed from this action because Plaintiff did not include them in his Amended Complaint.  All claims against Warden Anthony Davis, Lambert, Richly, Parker and Hurst are dismissed pursuant to 28 U.S.C. § 1915(e).  In addition, Plaintiff's Eighth Amendment claims pertaining to harassing comments are dismissed, his Eighth Amendment claim against Malvasa for walking him to recreation with his pants down, his Eighth Amendment failure to protect claim against Lieutenant Davis, and the conditions of confinement claim against Carter pertaining to the September 26, 2022 incident are also dismissed pursuant to 28 U.S.C. § 1915(e).  As no claims remain against Lieutenant Davis, he is dismissed from this action.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

This action shall proceed solely on Plaintiff's Eighth Amendment claims against Meade, Malvasa and Richardson for alleged use of excessive force, against Carter for alleged failure to protect, against Richardson for alleged conditions of confinement on September 26, 2022,

against Carter for alleged conditions of confinement following the January 10, 2023 incident, and on Plaintiff's First Amendment claim for alleged retaliation against Malvasa and Richardson.

Plaintiff has not provided U.S. Marshals Service forms, summonses or copies of the Amended Complaint to serve Defendants, and the Clerk's Office cannot forward this matter to the U.S. Marshals Service for service.  Plaintiff, therefore, is ordered to provide to the U.S. Marshals Service the following: forms, summonses, and copies of the Amended Complaint for Meade, Malvasa, Richardson, and Carter within thirty (30) days of this Order.  Plaintiff is further ordered to send a "Notice of Compliance," with an appropriate case caption for filing, with the completed forms.  Plaintiff is cautioned that failure to provide the U.S. Marshals Service with the required forms may result in dismissal of this action.  The Clerk's Office is directed to mail sufficient U.S. Marshals Service forms and summonses with a copy of this Order to Plaintiff Robert Williams #679-743, Southern Ohio Correctional Facility, P.O. Box 45699, Lucasville, OH 45699.

IT IS SO ORDERED.


June 10, 2024                                          _/s/ Benita Y. Pearson_____
Date                                                          Benita Y. Pearson
                                                                  United States District Judge